UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STUART C. IRBY CO., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Case No. 13-CV-0520-CVE-FHM |
| ) | |
| DANIEL DUANE BROWN, ) | |
| ) | |
| Appellee. ) | |

**OPINION AND ORDER**

On December 31, 2013, Magistrate Judge Frank H. McCarthy entered his Report and Recommendation (Dkt. # 24) (R & R) in the appeal by Stuart C. Irby Co. (Irby) of the bankruptcy court's order granting motion for partial judgment on the pleadings (Dkt. # 3-1, at 243-61) and the partial judgment (Dkt. # 3-1, at 262).[1] The magistrate judge recommended that the bankruptcy court's decisions be affirmed. An objection to the R & R (Dkt. # 25) was filed within the time limit prescribed by the magistrate judge, and Brown responded (Dkt. # 26).

**I.**

"On March 9, 2012, Brown filed a petition for relief under Chapter 7 of the Bankruptcy Code" in the United States Bankruptcy Court for the Northern District of Oklahoma. Dkt. # 3-1, at 244. Irby is a creditor in this bankruptcy proceeding. Id. at 10, 36. "The deadline for a creditor to commence an adversary proceeding to determine dischargeability of a debt under § 523(a)(2), (a)(4) and/or (a)(6) was June 11, 2012." Id. at 244; see also Fed. R. Bankr. P. 4007(c).

---

[1] While Irby specifically appeals the order granting the motion for partial judgment and the partial judgment, see Dkt. # 1, an earlier order of the bankruptcy court granting Brown leave to amend his answer (Dkt. # 3-1, at 230-35) is incorporated into the appealed issues.

On June 11, 2012, Irby filed a complaint objecting to the dischargeability of some of Brown's debts. Dkt. # 3-1 at 10. "Brown is an officer of Central Electric Company of Tulsa, Inc." (Central). Id., see also id. at 36-37. The complaint alleges that Brown, individually and on behalf of Central, obtained a line of credit with Irby. Id. at 10. The line of credit allegedly provided that Irby would provide construction supplies to Brown in exchange for Brown and Central's promise to pay for the supplies. Id. The complaint alleges that Brown and Central failed to pay for the supplies. Id. at 11. The complaint further alleges that "[u]nder Oklahoma law, amounts payable under any building contract are required to be held as trust funds for the payment of claims for labor and materials supplied to . . . the construction project." Id. It states that "the use of construction funds for any other purpose is a violation of the trust and a breach of the contractor's fiduciary duty." Id. The complaint concludes that Brown breached his fiduciary duty by using the trust funds for purposes other than paying Irby and that the debt is not dischargeable, pursuant to 11 U.S.C. § 523(a)(4).[2] Id.

On December 3, 2012, Brown filed an answer to Irby's complaint. Id. at 36. Irby filed a first amended complaint on December 4, 2012. Id. at 39.[3] The amended complaint again alleges that, pursuant to 11 U.S.C. § 523(a)(4), Brown's debts to Irby are not dischargeable. Id. at 45. However, the amended complaint also contains a number of allegations not included within Irby's first complaint. See generally id. at 40-48.

---

[2]  11 U.S.C. § 523(a)(4) states that any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is not dischargeable.

[3]  This amended complaint was filed after the June 11, 2012, deadline for creditors to commence adversary proceedings.

2

The amended complaint states that, in 2009, Central's account with Irby was delinquent and that Brown sought to reach a settlement with Irby. Id. at 40; see also id. at 146. The amended complaint alleges that "Brown represented that he would effect a first mortgage in Irby's favor on unencumbered commercial real estate" (the Collateral). Id. at 41. It also alleges that Brown represented that DJ Brown, Inc. (DJBI), of which Brown was the principal and president, owned the Collateral and that Brown "would effect on behalf of DJBI a guaranty of [Central's] and of his debts to Irby." Id.

The amended complaint further states that on March 13, 2009, Irby filed suit against Central and Brown in the District Court of Tulsa County, Oklahoma. Id.; see also id. at 146. An agreed judgment was executed against both Brown and Central. Id. at 41, 146. A promissory note was executed by Brown on Brown and Central's behalf, making Brown and Central jointly liable to Irby. Id. at 41-42, 146. Brown also executed a guaranty on DJBI's behalf, making DJBI the guarantor of the promissory note and any future indebtedness of Brown and Central to Irby. Id. at 42, 146. A mortgage was also executed on DJBI's behalf on the Collateral in favor of Irby. Id. Brown also executed an Application for Credit and Billing Information (the Credit Agreement) on behalf of Central, which provided that Irby would sell materials to Central on an open account. Id. Eventually, a second promissory note, on which Brown was liable, was signed. Id. at 44, 147.

The amended complaint states that on March 9, 2009, DJBI and Central Real Estate, LLC (CRE) merged and that CRE was the surviving entity. Id. at 44-45; see also id. at 147. "On March 10, 2009, Brown executed on behalf of CRE a mortgage . . . on the Collateral in favor of a bank." Id. at 45; see also id. at 147. The amended complaint states that Brown falsely represented to Irby "that DJBI owned the Collateral and that the Collateral was not subject to another mortgage." Id.

3

at 45.  Irby alleges that his misrepresentation would, pursuant to 11 U.S.C. § 523(a)(2), prevent the discharge of Brown's debt to Irby.  Id. at 40.  The amended complaint alleges, in the same manner as Irby's original complaint, that, by using construction funds for purposes other than the payment of claims for materials, Brown breached his fiduciary duty to Irby, preventing his debts from being discharged due to § 523(a)(4).  Id. at 45-46.  The amended complaint further alleges a number of common law claims.  Id. at 46-48.  These claims are that Brown breached both promissory notes and the Credit Agreement, that Brown engaged in fraudulent and negligent misrepresentation, and that Brown breached his fiduciary duty.  Id.

On December 28, 2012, Brown filed an answer to the first amended complaint.  Id. at 145. The only affirmative defenses asserted in Brown's answer to the amended complaint are that Irby's claims "are barred by the doctrine of novation, waiver and estoppel" and that the amended complaint "fails to state a claim for relief."  Id. at 148.  The answer admits that, pursuant to 11 U.S.C. § 523(a)(2), Brown's debts to Irby are not dischargeable.  Compare id. at 145, with id. at 40.

A joint report and discovery plan (joint report) was filed on January 2, 2013.  Id. at 150-69. The joint report states that the disputed questions of law include "Are the claims pursuant to § 523(a)(2) untimely and therefore subject to dismissal?"  Id. at 167.  The joint report also included a set of proposed deadlines, and the proposed deadline for amendments to pleadings was listed as January 15, 2013.  Id.  On January 16, the bankruptcy court entered a scheduling order; however, the scheduling order did not contain a deadline for the filing of amended pleadings.  Id. at 6.

On January 10, 2013, Brown filed a motion for partial judgment on the pleadings.  Id. at 170. The motion argued that the amended complaint included a new claim for relief under § 532(a)(2) and that the new claim was untimely.  Id. at 172-73.  It also argued that the amended complaint's

4

non-bankruptcy claims should be dismissed. Id. at 179. Irby's response to the motion was filed on January 31, 2013. Id. at 186. In its response, Irby argued that Brown has forfeited his statute of limitations defense to Irby's claim of nondischargeability under § 532(a)(2) because Brown, in his answer, admitted that Brown's debts to Irby are not subject to discharge and because Brown did not plead an affirmative defense of untimeliness. Id. at 190-91. Irby also asserted that the allegations in its first amended complaint related back to its initial complaint. Id. at 191.

On February 1, 2013, Brown filed a motion for leave to amend his answer to Irby's first amended complaint. Id. at 208. Brown's motion argued that his admission in his answer to paragraph 6, the paragraph in which Brown admits that Brown's debts to Irby are not dischargeable, was a scrivener's error. Id. Brown also argues that a scrivener's error resulted in the affirmative defense of the statute of limitations not being clearly plead as a defense. Id. Irby opposed Brown's motion. Id. at 225-27. The bankruptcy court granted Brown leave to amend his answer and Brown filed a first amended answer to Irby's amended complaint. Id. at 230. Subsequently, the bankruptcy court granted Brown's motion for partial judgment on the pleadings and entered a judgment against Irby on its claim under § 532(a)(2), as well as its claims for breach of the promissory notes and the Credit Agreement and for misrepresentation. Id. at 243-62.[4] Irby appealed this order and judgment. Id. at 263.

On December 31, 2013, the magistrate judge entered his R & R. Dkt. # 24. The R & R recommended that this Court find that the bankruptcy court acted properly in granting Brown leave to amend his answer to the amended complaint and that the bankruptcy court's determination that

---

[4] Additionally, Irby's common law claim for breach of fiduciary duty was stricken, as the bankruptcy court determined it was duplicative of Irby's § 523(a)(4) claim. Dkt. # 3-1, at 261.

5

Irby's § 523(a)(2) claim was untimely was correct. Id. at 10, 14.[5]  The magistrate judge recommended that the bankruptcy court's decisions be affirmed. Id. at 14.

Irby raises eight objections to the R & R. Dkt. # 25. Three objections concern whether the bankruptcy court acted properly when it allowed Brown to amend his answer. Id. at 3-6. In those objections, Irby argues that the magistrate judge used the wrong standard of review when determining whether the bankruptcy court used the correct legal standard in determining whether Brown should have been granted leave to amend his answer, that the magistrate judge and bankruptcy court erred in failing to analyze whether Brown had "good cause" to amend his answer, and that the magistrate judge was inconsistent in the significance he placed on the parties' joint report and discovery plan. Id. Five objections concern whether Irby's claim under 11 U.S.C. § 523(a)(2) relates back to Irby's filing of its original complaint. Id. at 6-10. In those objections, Irby argues that Fed. R. Civ. P. 15(c) was applied too restrictively, that no analysis of whether Brown suffered prejudice was performed, that the policy behind Fed. R. Bankr. P. 4007(c) was not considered, that his § 523(a)(4) and § 532(a)(2) claims are both for fraud, and that Irby's delay in filing an amended complaint was improperly considered. Id.[6]

---

[5] The magistrate judge also recommended that this Court find that Irby is not entitled to attorney's fees and collection costs, because "Irby's arguments on [that] issue were contingent upon its success on its § 523(a)(2) claim." Dkt. # 24, at 14.

[6] Irby's statement of issues to be presented on appeal (Dkt. # 3-1, at 276) includes: "Whether the Court incorrectly dismissed Irby's non-bankruptcy claims." However, in its brief to the magistrate judge, Irby states that it is not appealing the dismissal of its non-bankruptcy claims, except for its claim for attorney's fees. Dkt. # 20, at 30. Irby has waived its appeal of the dismissal of the non-bankruptcy claims, with the exception of its claim for attorney's fees.

**II.**

The Court must conduct a de novo review of the magistrate judge's R & R. Under 28 U.S.C. § 636(b)(1), a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996) ("De novo review is required after a party makes timely written objections to a magistrate's report. The district court must consider the actual testimony or other evidence in the record and not merely review the magistrate's report and recommendations."). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A district court reviewing a bankruptcy court decision applies the same standard of review that governs appellate review in other cases. Jenkins v. Hodes (In re Hodes), 402 F.3d 1005, 1008 (10th Cir. 2005). This Court therefore reviews "the bankruptcy court's legal determinations de novo and its factual findings for clear error." Id. While a court's grant of leave to amend a pleading is reviewed for abuse of discretion, see Pater v. City of Casper, 646 F.3d 1290, 1299 (10th Cir. 2011), whether the court applied the correct legal standard in its analysis of whether to grant leave to amend is reviewed de novo. See Murphy v. Deloitte & Toche Group Ins. Plan, 619 F.3d 1151, 1157 (10th Cir. 2010); Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 714 (8th Cir. 2008).

**III.**

**A.   Leave to Amend**

Irby argues that Brown's motion to amend his answer should have been governed by Fed. R. Civ. P. 16(b)(4)'s "good cause" standard, rather than Fed. R. Civ. P. 15(a)(2)'s standard that leave should be freely given when justice so requires. However, the bankruptcy court was correct in

7

applying the Rule 15(a)(2) standard to Brown's motion to amend his answer. Rule 15(a)(2) states that "a party may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).[7] Fed. R. Civ. P. 16(b) governs scheduling orders.[8] It states that a schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Rule 16(b)(4) is applicable only if a party is seeking to modify a scheduling order. Id. Because Brown's amendment to his answer did not require the scheduling order to be modified, Rule 16(b)(4) is inapplicable.

The scheduling order did not explicitly include a deadline for amending pleadings. Dkt. # 3-1, at 6. However, because the scheduling order was filed after the deadline for amending pleadings proposed by the joint report, it is possible that the scheduling order implicitly included a deadline to amend pleadings that had already passed. Compare id., with id. at 167. The bankruptcy court concluded that the scheduling order did not include or establish a deadline for amending the pleadings. Id. at 234. A bankruptcy court's interpretation of its own order is subject to deference. See e.g., Taumoepeau v. Mfrs. & Traders Trust Co. (In re Taumoepeau), 523 F.3d 1213, 1218 (10th Cir. 2008) ("[W]e owe substantial deference to the bankruptcy court's interpretation of its own orders."); William B. Schnach Ret. Trust v. Unified Capital Corp. (In re Bono Dev., Inc.), 8 F.3d 720, 721-22 (10th Cir. 1993), 8 F.3d at 721-22 ("The bankruptcy court surely knows more about the meaning of its own order than we do, and its interpretation of its order . . . is entitled to substantial deference."). The bankruptcy court did not abuse its discretion in determining that no deadline for the amendment of pleadings existed.

---

[7]  Fed. R. Civ. P. 15 applies in bankruptcy adversary proceedings. Fed. R. Bankr. P. 7015.

[8]  Fed. R. Civ. P. 16 applies in bankruptcy adversary proceedings. Fed. R. Bankr. P. 7016.

Irby cites Shehada v. City of Miami Beach, No. 11-22051-CV, 2012 WL 3801726 (S.D. Fla. Aug. 30, 2012), in support of its argument. Dkt. # 20, at 29. In Shehada, the parties filed a joint scheduling form that contained a deadline for amending pleadings. Shehada, 2012 WL 3801726, at *1. The court in Shehada did not file its scheduling order until after the proposed deadline for amending pleadings had already passed. Id. In its scheduling order, it listed that deadline as "N/A." Id. (internal quotation marks omitted). The court later held that a motion to amend plaintiff's second amended complaint that was filed after the proposed deadline was subject to the Rule 16(b) standard. Id. at *2-3. Irby cites Shehada for the proposition that parties' agreed deadlines are sufficient to trigger the good cause standard of Rule 16(b)(4). Dkt. # 20, at 29. However, the Court of Appeals for the Eleventh Circuit, of which the Southern District of Florida is a part, has held that a proposed scheduling order that has never been entered is insufficient to trigger Rule 16(b). McKinley v. Kaplan, 177 F.3d 1253, 1257 (11th Cir. 1999). In light of the McKinley decision, it is clear that the Shehada court was merely interpreting its own scheduling order, not stating that the deadline suggested by the parties in their joint scheduling form was sufficient on its own to trigger Rule 16(b).

It was proper for the bankruptcy court to apply the Rule 15(a)(2) standard to Brown's motion to amend. Neither Irby's objection to the R & R nor Irby's briefs on appeal contend that the bankruptcy court erred in its application of the Rule 15(a)(2) standard; they argue only that the Rule 15(a)(2) standard is inapplicable. See generally Dkt. # 20; Dkt. # 23; Dkt. # 25. Therefore, this

Court finds that the bankruptcy court did not abuse its discretion in granting Brown leave to amend his answer.[9]

### B.     Relation Back of Amendments

#### 1.     Application of Fed. R. Civ. P. 15(c)

Irby also argues that his amended complaint's 11 U.S.C. § 523(a)(2) claim relates back to his original complaint's 11 U.S.C. § 523(a)(4) claim. Irby argues that the requirements for relation back under Fed. R. Civ. P. 15(c) were applied too restrictively. The bankruptcy court did not err when it determined that Irby's § 532(a)(2) claim did not relate back to his § 532(a)(4) claim.

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1). However, "an amendment does not relate back 'when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'" Full Life Hospice, LLC v. Sebelius, 709 F.3d 1012, 1018 (10th Cir. 2013) (quoting Mayle v. Felix, 545 U.S. 664, 650 (2005)). "A new pleading cannot relate back if the effect of the new pleading 'is to fault [the defendants] for conduct different from that identified in the original complaint,' even if the new pleading 'shares some elements and some facts in common with the original claim.'" Id. (quoting U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc., 608 F.3d 871, 881 (D.C. Cir. 2010)) (alteration in original); see

---

[9]    Irby also argues that the magistrate judge used "the wrong standard of review to determine whether the bankruptcy court used the correct legal standard in its analysis of whether to grant Brown leave to amend his answer." Dkt. # 25, at 3. Because this Court reviews the bankruptcy court's decision de novo, it is irrelevant what standard of review the magistrate judge employed in his R & R. Likewise, Irby's argument that the magistrate judge afforded unequal weight to the joint report in different sections of his analysis is immaterial to this Court's de novo review of the bankruptcy court's decision.

also Hernandez v. Valley View Hosp. Assn'n, 684 F.3d 950, 962 (10th Cir. 2012) (holding that an amendment did not relate back because it was "based on factual allegations that were new and discrete from the facts [the plaintiff] originally pled"). Because the facts underlying Irby's § 532(a)(2) claim were new and discrete and the conduct alleged is different than that alleged in the original complaint, the § 532(a)(2) claim does not relate back.

Irby argues that, because both claims involve the same credit agreement, the § 532(a)(2) claim arose out of the same transaction as his original claim and necessarily relates back. That argument is unsupported by this circuit's precedent. Irby ignores the fact that the amended complaint contains numerous facts "that differ in both time and type from those the original pleading set forth." Full Life Hospice, LLC, 709 F.3d at 1018; see also Dkt. # 3-1, at 256 ("Glaringly absent from the original Complaint is any reference to the series of financial transactions that underlie the fraud charge . . . ."). Compare Dkt. # 3-1, at 40-45, with id. at 10-11. Additionally, that the amended complaint shares some facts in common with the original complaint is insufficient if the conduct alleged is different. Full Life Hospice, LLC, 709 F.3d at 1018. The conduct that the original complaint complains of is Brown "paying and/or disbursing construction trust funds for purposes other than the payment of supplies and materials." Dkt. # 3-1, at 11. In contrast, the amended complaint "outline[s] a scheme to defraud Irby by means of granting a fraudulent mortgage in settlement of a collection suit, the issuance of promissory notes, and the merger of companies controlled by Brown." Dkt. # 24, at 9; see also Dkt. # 3-1, at 40-45. The conduct alleged in the two

11

complaints is vastly different, and the application of the test outlined in Full Life Hospice, LLC precludes the application of Rule 15(c)(1).[10]

Irby notes that the Fourth Circuit has held that, if a factual nexus exists between the amendment and the original complaint and if the defendant had notice of the claim and will not suffer prejudice, then the amendment will relate back to the original claim. Grattan v. Burnett, 710 F.2d 160, 163 (4th Cir. 1983). However, the factual nexus described in Grattan is much tighter than the nexus in this case. In Grattan, the original compliant stated a claim for arbitrary dismissal and the amendment added claims for race and sex discrimination. Id. at 161. Both the amendment and the original complaint "concern the events leading up to [the plaintiff's] termination . . . and in both the termination was the ultimate wrong of which [the plaintiffs] complained." Id. at 163.[11] The ultimate wrong in Irby's original complaint is the use of construction trust funds for purposes other than paying Irby, while the ultimate wrong in the amended complaint is Brown defrauding Irby by entering into a series of transactions with the intent to provide worthless collateral to Irby in a settlement of a collection suit. Dkt. # 3-1, at 11, 140-45. Even if Tenth Circuit precedent did not compel a finding that Rule 15(c) does not apply, Grattan is distinguishable.

---

[10] Irby invokes Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 547 (2010), for the proposition that a court's interpretation of Rule 15(c) should not impose restrictions on claims relating back that are not found within the text of the rule. The test laid out in Full Life Hospice, LLC -- a later decided case -- does not impose a restriction not found in Rule 15(c); it is merely an interpretation of the restriction that a new claim must arise "out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

[11] The Fourth Circuit also states that the defendants in Grattan had notice of the discrimination claims because of a prior EEOC filing. 710 F.2d at 163. However, the Tenth Circuit has held that a prior EEOC filing has no bearing on the Rule 15(c)(1)(B) analysis. Hernandez, 684 F.3d at 962.

### 2. Significance of Prejudice

Irby argues that allowing the amended complaint to relate back would not cause Brown to suffer prejudice and that leave to amend should, therefore, have been granted. The existence of prejudice is not a component of the analysis set forth in Full Life Hospice, LLC v. Sebelius, 709 F.3d 1012, 1018 (10th Cir. 2013). However, even if it were, Irby's argument puts the cart before the horse. Grattan, the case cited by Irby, held that the factual nexus inquiry must be resolved before the question of prejudice will even be considered. See 710 F.2d at 163. Because, as discussed supra, a sufficient factual nexus does not exist, there is no need to examine whether Brown would suffer prejudice as a result of Irby's proposed amendment.

### 3. Policy of Fed. R. Bankr. P. 4007(c)

Irby further contends that an analysis of whether his amended complaint relates back must consider whether relation back would violate the policy behind Fed. R. Bankr. P. 4007(c)'s deadline.[12] Irby cites the Fourth Circuit's statement that "Rule 15(c) must be understood to freely permit amendment of pleadings and their relation-back so long as the policies of statutes of limitations have been effectively served." Goodman v. Praxair, Inc., 494 F.3d 458, 468 (4th Cir. 2007). The rule outlined in Full Life Hospice, LLC, does not require an examination of a statute of limitations's policy, but even if analyzing the policy behind Rule 4007(c) is necessary, the bankruptcy court's conclusion remains correct. See 709 F.3d at 1018.

The Rule 4007(c) deadline is strictly construed. Themy v. Yu (In re Themy), 6 F.3d 688, 689 (10th Cir. 1993). This rule "reflect[s] an important policy or purpose and [its] enforcement is

---

[12]   Rule 4007(c) creates the deadline for a creditor to commence an adversary proceeding to determine dischargeability of a debt under both § 523(a)(2) and § 523(a)(4). See Fed. R. Bankr. P. 4007(c).

13

basic to proper bankruptcy administration." Torrez v. Dickinson (In re Dickinson), No. 99-1506, 2000 WL 1761065, at *2 (10th Cir. Nov. 29, 2000) (quoting H.T. Paul Co. v. Atteberry (In re Atteberry), 194 B.R. 521, 525 (D. Kan. 1996)) (internal quotation marks omitted).[13]

> Fundamental to our insolvency laws is the notion that bankruptcy in the life of an individual is a passing phenomenon, after which life must go on. The viability and rapidity of that process is the essence of the discharge in bankruptcy and related fresh start doctrine. Bankruptcy Rules 4004(a) and (b), 4007(c) and 9006(b)(3) are the means utilized to achieve this objective. They reflect a considered determination that a final cut-off date insuring that debtors will be free after a date certain, outweighs individual hardship to creditors that may be caused by rigid adherence to the rules.

Household Fin. Co. v. Beam (In re Beam), 73 B.R. 434, 437 (Bankr. S.D. Ohio 1987) (citations omitted); see also Walker v. Wilde (In re Walker), 91 B.R. 968, 979 (Bankr. D. Utah 1988); In re Klein, 64 B.R. 372, 375 (Bankr. E.D.N.Y. 1986). The policies underlying Rule 4007(c) do not weigh in favor of applying a rule more lenient than the one described in Full Life Hospice LLC, 709 F.3d at 1018.

Additionally, the policy behind the relation back provisions of Rule 15(c) is based upon notice. See McClelland v. Deluxe Fin. Servs., Inc., 431 Fed. App'x 718, 723 (10th Cir. 2011); Goodman, 494 F.3d at 471. As discussed supra, the amended complaint's claim under § 532(a)(2) consists of new facts and allegations of misconduct. The original complaint fails to put Brown on notice of the claims presented in the amended complaint, and the policies of Rule 15(c) itself weigh against relation back.

---

[13] This and all other unpublished opinions are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

14

### 4. Significance of Whether Both Claims Were For Fraud

Irby argues that the bankruptcy court was incorrect in concluding that Irby's § 532(a)(4) claim was not for fraud.[14] Whether Irby's claims under § 523(a)(2) and § 523(a)(4) are both for fraud is irrelevant. Relation back does not depend on whether the amended complaint alleges the same type of claim as the original complaint; relation back depends on whether a new claim in the amended complaint arises from the same facts and concerns the same conduct. Full Life Hospice, LLC, 709 F.3d at 1018. As discussed supra, the § 532(a)(2) claim in the amended complaint is based upon different facts and different conduct than the § 532(a)(4) claim, even if the alleged misconduct in both could broadly be described as "fraud." In noting that fraud must be plead with particularity, the bankruptcy court was not stating that Irby's original claim was not for fraud; rather, the bankruptcy court was illustrating that the § 532(a)(4) claim failed to provide proper notice to Brown that Irby objected to the conduct underlying Irby's § 532(a)(2) claim. See Dkt. # 3-1, at 257 n.52.

Irby also contends that the original complaint stated broad allegations made more particular by the amended complaint. The amended complaint was not simply more particular than the original

---

[14] Section 532(a)(4) includes any debt "for fraud or defalcation while acting in a fiduciary capacity . . . ." 11 U.S.C. § 523(a)(4). Section 532(a)(2) includes any debt "for money, property, [or] services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." Id. § 523(a)(2).

15

complaint; it contained different allegations and claims that in no way fell under the ambit of the original complaint. Compare Dkt. # 3-1, at 40-45, with id. at 10-11.[15]

### 5.     Significance of Irby's Delay

Irby argues that the bankruptcy court improperly considered Irby's delay in filing its amended complaint when determining whether Irby's amended complaint relates back to its original complaint. "As the contrast between Rule 15(a) and Rule 15(c) makes clear . . . the speed with which a plaintiff moves to amend her complaint or files an amended complaint after obtaining leave to do so has no bearing on whether the amended complaint relates back." Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 553 (2010). However, the bankruptcy court did not improperly consider Irby's delay in filing in its relation back analysis. The bankruptcy court mentioned Irby's delay to demonstrate that Irby's § 523(a)(2) would be barred if it did not relate back. Dkt. # 3-1, at 252. Once it began its relation back analysis, the bankruptcy court did not again mention the length of delay. See id. at 253-58. Even if the bankruptcy court improperly considered the length of Irby's delay, the bankruptcy court's ultimate conclusion would still be proper; as discussed supra, the amended complaint cannot relate back to the original complaint because it is based on different facts

---

[15]     Irby contends that Brown's failure to assert a defense of lack of particularity as to the original § 523(a)(4) claim bars Brown from objecting to Irby's § 523(a)(2) claim. This contention is fatally flawed. Brown may have believed that Irby's original claim stated with sufficient particularity a claim for breach of fiduciary duty arising from the misapplication of construction funds. That belief has no bearing on whether the original claim stated with particularity a claim under a different section of the statute, based upon different facts, and objecting to different conduct. The case cited by Irby regarding a failure to object is distinguishable, as it deals with an amended complaint that includes specific allegations that make up the broader allegation of the original complaint, not an amended complaint that contains allegations that are different than those in the original complaint. See Malloy v. Mulkey Tire, Inc. (In re Universal Factoring Co., Inc.), 279 B.R. 297, 304 (Bankr. N.D. Okla. 2002); see also McClelland v. Deluxe Fin. Servs., Inc., 431 Fed. App'x 718, 725 (10th Cir. 2011).

and conduct then the original complaint. The bankruptcy court did not abuse its discretion in allowing Brown to amend his answer and the bankruptcy court was correct in determining that Irby's § 532(a)(2) claim did not related back to Irby's original complaint and was time-barred.

**IT IS THEREFORE ORDERED** that Report and Recommendation (Dkt. # 24) is **accepted**, and the bankruptcy court's decisions are **affirmed**.

**IT IS FURTHER ORDERED** that the objection (Dkt. # 25) is hereby **denied**.

**DATED** this 14th day of February, 2014.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE